IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH M. SHEFFIELD and, ) | |
| MARGIE L. SHEFFIELD, ) | |
|     Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO: 09-00061-KD-M |
| ) | |
| FEDERAL DEPOSIT INS. CO., ) | |
| (as Receiver for FRANKLIN BANK, SSB) ) | |
| and PRESTIGE TITLE CO., INC., ) | |
|     Defendants. ) | |

**ORDER**

This matter is before the Court on Defendant Federal Deposit Insurance Corporation (as receiver for Franklin Bank SSB)'s motion for summary judgment (Docs. 8, 9); Plaintiffs' response (motion to admit plaintiffs' narrative statement of the facts and the cause of action stated in each count) (Doc. 11); Defendant Prestige Title Company's motion for summary judgment (Docs. 14,15, 17). Defendant Federal Deposit Insurance Corporation's notice of Plaintiffs' failure to oppose summary judgment (Doc. 18), Plaintiffs' motion to dismiss the FDIC/Franklin Bank's summary judgment (Doc. 19), Defendant FDIC/Franklin Bank's Supplemental Briefs (Doc. 24, 27).  For the reasons set forth herein, the Defendant FDIC/Franklin Bank's motion for summary judgment is **DENIED** and Defendant Prestige Title Co., Inc's motion for summary judgment is **GRANTED** such that Plaintiffs' motion to dismiss (Doc. 19) is **MOOT.**

**I.**   **Background**

**A.**   **Procedural**

On September 8, 2006, Plaintiff Joseph Sheffield ("Sheffield"), who is proceeding *pro se,* initiated this litigation in the Circuit Court for Mobile County, Alabama (CV-06-3133) against Franklin Bank, State Savings Bank ("Franklin Bank") and Prestige Title Company, Inc. ("Prestige

Title") in the Circuit Court of Mobile County, Alabama, CV-06-3123.[1] (Doc. 1-4). Plaintiffs' state court Complaint (as amended) alleges claims against the Defendants for fraud and forgery stemming from Franklin Bank's failure to provide Mr. Sheffield with credit life insurance and Prestige Title's alleged forgery of Mrs. Sheffield's name on certain documents. (Id.) In the complaint, Plaintiffs assert that Mr. Sheffield discussed credit life insurance with Franklin Bank's loan officer Steve Hobbs ("Hobbs") from December 23, 2005 through the last day of his recision period on June 5, 2006, that Mr. Sheffield signed up for such insurance, and that Hobbs instructed him to wait until he closed on the loan and then call an insurance company phone number to secure the insurance. (Doc. 9-8 at 2-3). Mr. Sheffield alleges that when he called the insurance department at the phone number provided by Hobbs, he was told that no one at Franklin Bank would ever sell insurance without an escrow account. (Id. at 3). Mr. Sheffield asserts that he should be entitled to recover damages for this fraud. (Id. at 4). Mr. Sheffield alleges that Hobbs lied to him about the credit life insurance and that he was "never supposed to obtain it." (Doc. 9-8 at 5). Mr. Sheffield also asserts that Prestige Title forged his wife's signature on the loan document. Plaintiffs seek damages for the alleged fraud and forgery in the amount of the loan ($103,500) plus out of pocket expenses, or for the loan to be paid off, as well as punitive damages. (Doc. 9-8 at 7; Doc. 1-4).

Defendant Federal Deposit Insurance Corporation ("FDIC") removed this case on February 5, 2009 to this Court. (Doc. 1). In so doing, the Defendant FDIC asserted in its notice of removal that on November 7, 2008, the Texas Department of Savings and Mortgage Lending declared Franklin Bank State Savings Bank insolvent and appointed the FDIC as its Receiver, as evidenced by the Order of Closure which also tendered all assets and affairs of Franklin Bank to the receiver.

---

[1] He later added his wife, Mrs. Margie Sheffield, as a plaintiff.

(Id.)  The FDIC asserts that it accepted the appointment as receiver pursuant to 12 U.S.C. § 1821(c)(3)(A) on November 7, 2008, as evidenced by the Letter of Acceptance.  (Id.)  Defendant FDIC removed this case claiming that pursuant to 12 U.S.C. § 1819(b)(2)(A), *all* suits of a civil nature to which the FDIC, in any capacity, is a party, are deemed to arise under the laws of the United States and the district courts have original jurisdiction thereof as provided under 28 U.S.C. § 1331.  (Id.)  Subsequently, in June 2009, Defendant FDIC/Franklin Bank and Defendant Prestige Title both moved for summary judgment (Docs. 8, 9, 14, 15, 17) which are now before the Court.

**B.     Factual**

The record reveals that on December 29, 2005,[2] at the time of his application with Franklin Bank, Mr. Sheffield signed an initial Truth in Lending Disclosure statement[3] in which he specifically signed next to the line for credit life insurance, indicating that he wanted credit life insurance.  (Doc. 9-3 at 97; Doc. 9-4).  An Affidavit from the former Senior Vice-President of Franklin Bank states that the "documents indicate that Plaintiff may have desired credit life insurance[.]"  (Doc. 9-9). Credit life insurance was not mentioned in the supporting documentation to the final transaction (the Note, Mortgage, Settlement Statement, etc.).  (Doc. 9-2; Doc. 9-6; Doc. 9-9).  Mr. Sheffield testified that he knew that he did not have credit life insurance when he closed on his loan.  (Doc. 9-3 (Sheffield Dep. at 67, 94, 100-101)).  Mr. Sheffield testified in his deposition that he has not tried to obtain credit life insurance, but has tried to obtain life insurance and has been denied. (Id. at 105).

On May 31, 2006, Mr. Sheffield executed an agreement with Franklin Bank, SSB, through which Sheffield's manufactured home and acreage was refinanced with a Veterans Affairs'

---

[2]  Signed by a representative of Franklin Bank on December 23, 2005.

[3]  The top of this document states "this is neither a contract or a commitment to lend."

3

mortgage, securing a Note in the amount of $103,500.  (Doc. 9-2).  At the loan closing, Mr. Sheffield also executed a documented entitled Notice of No Oral Agreements which states that the written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements.  (Doc. 9-5). Mr. Sheffield received the funds and his prior mortgage with GreenTree Financial was paid off.[4] (Doc. 9-3 (Sheffield Dep. at 103)).  Mr. Sheffield disputes that his wife, Margie L. Sheffield, executed the mortgage loan document, asserting that her name on the signature page was forged by Sandy Mosley ("Mosley"), an employee of Prestige Title Company, Inc.[5]  (Doc. 9-2 at 11).

**II.     Discussion**

**A.     Jurisdiction**

At the outset, in the process of reviewing the parties' respective allegations in the pending motions for summary judgment, the Court discovered cause to question its jurisdiction. Specifically, this Court ordered briefing on the propriety of federal jurisdiction in light of the exhaustion of the *Financial Institutions Reform, Recovery, and Enforcement Act of 1989* ("FIRREA")'s administrative remedies requirement under 12 U.S.C. § 1821(d)(13)(D)[6] and the propriety of litigation in this forum

---

[4] Also, Sheffield testified before the Court on September 10, 2009, that the reason he refinanced with Franklin Bank was because GreenTree would not provide credit life insurance on the mortgage and Franklin Bank represented that they would provide the credit life.

[5] Mr .Sheffield also –somewhat vaguely – alleges through his own handwritten notes on copies of the documents filed in court that certain other signatures of "Sheffield" (including his wife's name) were forged. See e.g., Doc. 1-4 at 130, 131, 132.  However, a review of these documents, showing Mr. Sheffield's handwritten notations, reveals that the notary clearly entered in their names as simply part of listing who and what was being notarized as a matter of filling out the documents. No forgery of his or his wife's name, where their personal signature was required, is evidenced by these documents.

[6] Section 1821(d)(13)(D) states, in pertinent part, as follows:

Except as otherwise provided in this subsection, no court shall have
jurisdiction over . . . . (ii) any claim relating to any act or omission of such institution or

under 12 U.S.C. § 1821(d)(6)(A).[7]  (Doc. 23).  In response, the Defendant FDIC/Franklin Bank represented that the Plaintiff had exhausted his administrative remedies such that the jurisdictional bar of Section 1821(d)(13)(D) was inapplicable. (Doc. 24 at 2, n.1).[8]  The Defendant FDIC/Franklin Bank asserted as well that Section 1821(d)(6)(A) is a discretionary venue provision, not a jurisdictional provision, yet consented to transfer of this case to either the District Court for the District of Columbia or the District Court for the Southern District of Texas (where Franklin Bank had its principal place of business).  (Doc. 24).

Additionally, this Court found that while the vast majority of suits of a civil nature to which the FDIC is a party are deemed to arise under the laws of the United States such that federal courts would have original jurisdiction under Section 1331, there is one exception to that rule.  This is the state law exception as detailed in Section 1819(b)(2) and which provides, in relevant part, as follows:

> 2) Federal court jurisdiction
> (A) In general
> Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.

---

the Corporation as receiver.

*Id.* (emphasis added).

[7] Section 1821(d)(6)(A) provides that before the end of the 60-day period beginning on the earlier of (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(I), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim). 12 U.S.C. § 1821(d)(6)(A).

[8] Plaintiffs did not file any response or reply.

* * *

(D) State Actions

Except as provided in subparagraph (E), any action–

> (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
>
> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
>
> (iii) in which only the interpretation of the law of such State is necessary, shall not be deemed to arise under the laws of the United States.

(E) Rule of construction

Subparagraph (D) shall not be construed as limiting the right of the Corporation to invoke the jurisdiction of any United States district court in any action described in such subparagraph if the institution of which the Corporation has been appointed receiver could have invoked the jurisdiction of such court.

12 U.S.C.A. § 1819(b)(2)(A), (D) and (E). Accordingly, under Section 1819(b)(2)(D)-(E), no federal jurisdiction will lie in those situations where the following six factors exist: 1) the FDIC acts as a receiver for a failed state insured bank or savings and loan; 2) the FDIC was appointed by a state authority; 3) the FDIC is not a plaintiff; 4) the lawsuit involves only preclosing rights[9] against the FDIC insured bank or obligations owed by the FDIC insured bank to depositors, creditors, or stockholders; 5) to decide the case, only the interpretation of the state's law is required; and 6) the state insured bank or savings and loan itself could not have invoked federal court jurisdiction. In

---

[9] See, e.g., Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005) (discussing preclosing rights as those rights which accrue before a failed bank enters receivership (*i.e.*, preclosing equates with pre-receivership)). See also generally Federal Deposit Ins. Corp. v. Sumner Financial Corp., 602 F.2d 670, 679 (5th Cir. 1979) (concluding that the state law exception is an absolute preclusion of federal court jurisdiction).

short, an action will not be deemed to arise under federal law if these factors are present. The Court thus ordered additional briefing on the state law exception to 12 U.S.C. § 1819(b)(2)(A) as detailed in Section 1819(b)(2)(D-E), as well as the citizenship of Defendant Prestige Title Co., Inc. (to evaluate whether the exception to the state law exception applies). (Doc. 25). In response,[10] the Defendant FDIC/Franklin Bank asserted that: 1) Franklin Bank is not a state insured bank; 2) even if Franklin were a state insured bank the law of Alabama applies, not Texas; and 3) the Plaintiffs' fraud claim is precluded under 12 U.S.C. § 1823(e) because federal law applies. (Doc. 27). The Defendant FDIC/Franklin Bank also asserted that Prestige Title Co., Inc. is a Mississippi corporation, such that federal diversity jurisdiction is present. (Id.)

While the recent trek into FDIC case law all but buried this Court under FIRREA's "avalanche of words,"[11] the Court ultimately determines that it has jurisdiction to hear this case. Specifically, 12 U.S.C. § 1821(d)(13)(D) states that *except as otherwise provided in this subsection* (meaning Section 1821(d)), no court has jurisdiction over any claim relating to any act or omission of such institution or the FDIC as receiver. A review of relevant case law indicates that Section 1821(d)(6)(A) allows within 60 days of an administrative disallowance of a claim by the FDIC for: 1) the claim to be filed in the district court within which the failed bank's principal place of business is located or the United States District Court for the District of Columbia; or 2) for a continuance of an action (the claim) commenced before the FDIC was appointed as receiver. See generally Aliberti, Larochelle & Hodson Engineering Corp., Inc. v. First Meridian Group, 795 F. Supp. 42 (D. Me. 1992); Marquis v. FDIC, 965 F.2d 1148 (1st Cir. 1992).

---

[10] Plaintiffs did not file any response or reply.

[11] Marquis v. FDIC, 965 F.2d 1148, 1152 (1st Cir. 1992).

Moreover, Section 1819(b)(2)(B) provides for removal from a state court by the FDIC to the "appropriate United States district court[,]" and the determination of what constitutes the "appropriate United States district court" is found in the general removal statute 28 U.S.C. § 1441.[12] See, e.g., Matter of Meyerland Co., 960 F.2d 512, 521 (5th Cir. 1992); Lazuka v. FDIC, 931 F.2d 1530 (11th Cir. 1991). Since this case was pending in the state court of Mobile, Alabama *before* the FDIC was appointed as receiver, this Court for the Southern District of Alabama is the "appropriate" court to exercise removal jurisdiction. Id. For these reasons, this action was properly removed to this Court.

However, the analysis does not end here, as this Court must assess whether the state law exception, 12 U.S.C. § 1819(b)(2)(D), applies. A review of the case law reveals that the state law exception does not apply to the facts of this case because the case – while satisfying Sections 1819(b)(2)(D)(i-ii) (because it involves preclosing rights of the Sheffields and a state insured bank[13] for which has been FDIC was appointed as receiver by a state authority and where the FDIC is not the plaintiff) – does not involve "only the interpretation of the law of such State" as set forth in

---

[12] Section 1441(a) of the general removal statute provides: "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441.

[13] As articulated in Pyle v. Meritor Savings Bank, 821 F. Supp. 1072, 1075 (E.D. Penn. 1993) and Bascom Construction, Inc. v. FDIC, 785 F. Supp. 277, 278 (D.N.H. 1992), the phrase "state insured depository institution" means any state chartered depository institution (any bank or savings association the deposits of which are insured) which is insured by the FDIC (*i.e.*, state insured bank means a bank insured by the FDIC not a bank insured by the state). See also e.g., Bayshore Executive Plaza Partnership v. Federal Deposit Ins. Corp., 750 F. Supp. 507, 510 (S.D. Fla. 1990) (concluding that "[t]he term 'insured depository institution' refers to any bank ... the deposits of which are insured by the Corporation [FDIC] pursuant to this chapter. 12 U.S.C. § 1813(c)(2).'"). See also Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005) (discussing that for the state law exception to apply the action must contain claims filed against an "FDIC-insured State bank[]").

Section 1819(b)(2)(D)(iii). Specifically, in light of the defenses raised by the Defendant FDIC/Franklin Bank, this Court must *interpret* whether the claim is barred by the federal statutes, i.e., 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A) (providing essentially that an agreement tied to an FDIC acquired asset, and at issue in a claim, must be in writing). See Section II.B.1.a. Moreover, the Defendant FDIC/Franklin Bank asserts that the state law exception cannot apply because Alabama law governs this case, not Franklin Bank's state (Texas) law, and thus, the "only the interpretation of the law of *such* State is necessary[]" requirement is absent. The Defendant FDIC/Franklin Bank is correct. The Court finds that the modifier "such," as set forth in Section 1821(b)(2)(D)(iii)'s "such State," operates to specify the state of the relevant "State insured depository institution" (as previously outlined in Sections 1821(b)(2)(D)(i-ii)). Accordingly, here, "such State" means the State of Texas, as the failed insured depository institution at issue is a Texas state savings bank. For these reasons, the Court need not address the Defendant FDIC/Franklin Bank's final contention that federal diversity jurisdiction – through the Mississippi citizenship of Defendant Prestige Title Co., Inc. – thwarts application of the state law exception via 12 U.S.C. § 1819(b)(2)(E). Having resolved the foregoing jurisdictional concerns, the Court now turns to the substantive claims pending on summary judgment.

**B.   Analysis**

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).[14] The

---

[14]   Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

9

party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

Sheffield's Complaint asserts a claim for fraud in the inducement against Defendant Franklin Bank, SSB ("Franklin Bank") stemming from the bank's failure to provide the Sheffields with credit life insurance, and a claim for forgery against Defendant Prestige Title Co., Inc. ("Prestige Title")

---

FED. R. CIV. P. 56(c).

due to Mrs. Sheffield's signature on the mortgage documents.

### 1. Fraud in the Inducement: (FDIC/Franklin Bank, SSB)

While not a model of clarity, the allegations set forth in the Plaintiffs' Complaint assert what is tantamount to a claim for fraud in the inducement against Franklin Bank, SSB (now the FDIC). Plaintiffs contend that Franklin Bank's actions (and those of Steve Hobbs) of failing to provide credit life insurance, as represented, harmed his wife and him because they "lost their credit life insurance" and "stole his [Mr. Sheffield's] security for his wife and family." (Doc. 11 at 2; Doc. 19 at 3; Doc. 1-4 at 192). Specifically, Plaintiffs assert that Mr. Sheffield discussed credit life insurance with Franklin Bank's loan officer Steve Hobbs ("Hobbs") from December 23, 2005 through the last day of his recision period on June 5, 2006, that Mr. Sheffield signed up for such insurance, and that Hobbs agreed that he would receive such insurance as part of the loan transaction but then instructed Mr. Sheffield to wait until he closed on the loan and then call an insurance company phone number to actually secure the insurance. (Doc. 9-8 at 2-3). Plaintiffs allege that when Mr. Sheffield called the insurance department at the phone number provided by Hobbs, he was told that no one at Franklin Bank would ever sell insurance without an escrow account. (Id.) In sum, Plaintiffs allege that Hobbs lied to Mr. Sheffield about the credit life insurance and that Hobbs knew that Mr. Sheffield was "never supposed to obtain it." (Doc. 9-8 at 5). Plaintiffs claim actual damages in the amount of the payoff of the loan ($103,500) plus $882.89 for out-of-pocket expenses for Franklin Bank's fraud because: "Steve Hobbs []stole my protection for my wife & family[] and lied about his company, not selling this type of insurance[]" (Doc. 1-4 at 192).

A party who has been the victim of a misrepresentation of a material fact or the suppression of a material fact when there is a duty to speak upon which it reasonably relied during negotiations

11

can claim fraud in the inducement. See, e.g., Lacey v. Edmunds Motor Co., 113 So.2d 507, 510 (1959).  "In such cases, the aggrieved party, in effect, says, 'I would never have entered into the contract if you had not induced me to do so by incorrect statements or omissions of material facts.'" Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources, 986 So.2d 1093, 1129 (Ala. 2007).  "Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala. 2000) (emphasis omitted).

The Defendant FDIC/Franklin Bank asserts that Section 1823(e) and Section 1821(d)(9)(A) bar Plaintiffs' claim.  However, the FDIC simultaneously concedes in its motion for summary judgment that Section 1823(e) "does not technically apply" to this case because the assets of Franklin Bank (the Sheffields' mortgage) were sold to another entity (Wells Fargo) several years before the FDIC was appointed as receiver.  That same rationale holds true for Section 1821(d)(9)(A).  Indeed, federal courts have held that the threshold requirement for applicability of both Section 1823(e) and Section 1821(d)(9)(A) is that the FDIC *must* have acquired the asset in question when it assumed receivership.  As articulated in Thigpen v. FDIC, 983 F.2d 644, 648-649 (5th Cir. 1993) (emphasis in original):

> . . . . [w]e have already concluded that the transaction was not covered by § 1823(e) because it did not embody or was not made in connection with the bank's 'acquisition' of an 'asset.' . . . . [A]mong the specific provision of § 1823(e) adopted by § 1821(d)(9)(A) is the requirement that an enforceable agreement must have been 'executed by the depository institution and any person claiming an adverse interest thereunder, contemporaneously with the *acquisition* of the *asset* by the depository institution." . . . . there is still no doubt that these terms describe essential features of the transaction to which § 1823(e), and now § 1821(d)(9)(A), applies.  These

12

> modifiers bind § 1823(e) to its origins in the *D'Oench* doctrine as a device to protect the federal regulators from side agreements that would have impeded the collection of obligations owed to the Bank. Such obligations are the bank's 'assets' acquired in the course of its banking activities.
>
> Moreover, if § 1821(d)(9)(A) were to apply to claims arising from any agreement entered into by a depository institution, absurd consequences would result . . .

In sum, for either of these sections to apply, the FDIC must have acquired the asset at issue. Thus, neither of the Sections present a bar to Plaintiffs' fraud in the inducement claim against the Defendant FDIC/Franklin Bank because the FDIC did not acquire the asset in this case (the Sheffields' mortgage).

Additionally, the Defendant FDIC/Franklin Bank asserts that the fact that Mr. Sheffield signed a Notice of No Oral Agreements[15] document at the loan closing bars Plaintiffs' claim because the fraud claim is premised, in part, on oral representations allegedly made by former Franklin Bank employee Steve Hobbs. The "no oral agreements" document does not bar Plaintiffs' fraud in the inducement claim because the oral agreement relied upon by Sheffield is not asserted to interpret the terms of the contract, rather the oral agreement is relied upon to prove fraud. As specified in Wood v. Phillips, 849 So.2d 951, 959 (Ala. 2002), "[i]t is clear that evidence which may be admissible to attempt to prove fraud in the inducement of a contract is not to be considered in *interpreting a written contract*." (emphasis in original). See also Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 661 (Ala. 2001). See, e.g., Downs v. Wallace, 622 So.2d 337, 342 (Ala. 1993) (holding that even though an integration clause in a written agreement may support a finding that the plaintiff did not rely on extraneous representations, when the agreement has been induced by

---

[15] The Notice of No Oral Agreements provides that the written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements by the parties. (Doc. 9-5).

13

intentional fraud, the mere presence of an integration clause in the written instrument does not, as a matter of law, insulate the guilty party); Environmental Systems, Inc. v. Rexham Corp., 624 So.2d 1379 (Ala. 1993) (finding that the parol evidence rule has no application in a fraud action because integration clauses in contracts are not applicable to exclude evidence relating to fraud -- the parol evidence rule applies to legal claims concerning the meaning and enforceability of contracts, not to claims of fraud). Evidence of fraud is always admissible, even though there is a completely integrated writing. Nelson Realty Co. v. Darling Shop, 101 So.2d 78, 84 (Ala. 1957).

In sum, the Plaintiffs have provided sufficient unrebutted evidence of fraud in the inducement to survive summary judgment. Notably, the Defendant FDIC/Franklin Bank has not presented any evidence to contradict Plaintiffs' allegations with regard to the credit life representations made by the bank's former employee Steve Hobbs. Similarly, the Defendant FDIC/Franklin Bank has not presented any evidence to rebut the December 2005 Truth in Lending Disclosure statement, on which Mr. Sheffield specifically signed next to the line for credit life insurance, indicating that he wanted credit life insurance, and Steve Hobbs signed the document apparently acknowledging this request. (Doc. 9-3 at 97; Doc. 9-4). Compounding the Defendant FDIC/Franklin Bank's tenuous claim that no genuine issues of material fact exist to preclude summary judgment, is an Affidavit from the former Senior Vice-President of Franklin Bank, in which she admits that the "documents indicate that Plaintiff may have desired credit life insurance[]" (Doc. 9-9), and said defendant's own admission in court pleadings that "Franklin Bank does not offer this [credit life insurance] product." (Doc. 1-4 at 204). In brief, taking Sheffield's allegations in the light most favorable for purposes of summary judgment review, Steve Hobbs of Franklin Bank represented that Franklin Bank sold credit life insurance and then offered credit life insurance to Mr.

Sheffield even though Franklin Bank did not sell such insurance. In return, Mr. Sheffield agreed to refinance and execute a VA loan with Franklin Bank, and accepted the offer – agreeing to purchase credit life insurance from Franklin Bank as part of the VA loan. However, despite Steve Hobbs' verbal assurances that he would receive credit life insurance even though such was not provided for in the closing documents, Mr. Sheffield never received credit life insurance.

Further, although the damages have not been quantified in this case, Mr. Sheffield asserted some damage evidence, under oath, at the recent Pretrial Conference. Specifically, Mr. Sheffield testified that he is unable to adequately replace the lost credit life insurance at the same cost that was allegedly promised by Steve Hobbs of Franklin Bank. Specifically, rather than the $120-$160 promised in 2006, to obtain credit life insurance now would cost $375-400 per month and would be terminated in five (5) years when he reaches the age of 70 years old.[16]

The foregoing provides sufficient evidence to create a genuine issue of fact as to Plaintiffs' fraud in the inducement claim and accordingly, the Defendant FDIC/Franklin Bank's motion for summary judgment is **DENIED.**

---

[16] Assuming this Court finds in favor of Plaintiffs at trial, Plaintiffs have thus far not presented sufficient evidence from which the amount of damages can be ascertained. The failure to present evidence from which this Court could determine how much it would cost now for plaintiff to obtain credit life insurance, may ultimately result in nominal damages (*e.g.*, $1.00) for lack of evidence.

### 2. **<u>Forgery: Prestige Title Co., Inc.</u>**

The allegations set forth in Sheffield's Complaint assert a claim for forgery against Defendant Prestige Title Co., Inc.[17] for allegedly forging Mrs. Sheffield's signature on the May 31, 2006 VA loan document. Summary judgment is due to be granted in favor of Defendant Prestige Title as a matter of law.

"Forgery is a species of fraud." <u>Fortis Benefits Ins. Co. v. Pinkley</u>, 926 So.2d 981, 988 (Ala. 2005). <u>See</u> also <u>e.g.</u>, <u>Life Insurance Co. of Georgia v. Smith</u>, 719 So.2d 797, 809 (Ala. 1998). The elements of forgery are generally: 1) a writing of such a nature that it is a possible subject of forgery; 2) which writing is false-which may be accomplished by the fraudulent application of a false signature to a true instrument, or a real signature to a false instrument; and 3) was made with the intent to defraud. <u>Johnson v. State</u>, 412 So.2d 822 (Ala. Cr. App. 1981); <u>Finney v. State</u>, 348 So.2d 876, 877 (Ala. Cr. App. 1977); <u>Powers v. State</u>, 333 So.2d 205, 207 (Ala. Cr. App. 1976)). "The essence of forgery is an intent to injure or defraud when the act is done." <u>Finney</u>, 348 So.2d at 877.

The Sheffields allege that Defendant Prestige Title Co., Inc. (specifically Sandy Mosley who worked for that entity) forged Mrs. Sheffield's signature on the VA loan in order to comply with <u>Ala</u>. <u>Code</u> § 6-10-3 (1975), after his wife had been removed from the title document by the lender Franklin Bank, SSB. (Doc. 1-4). Other than generally asserting that this has caused "a great amount of duress" and that "had the truth been known . . . we could have made a better contract legally[,]" Sheffield has failed to explain precisely how the alleged forgery of his wife's name on the mortgage

---

[17] While Defendant Prestige Title Co., Inc., asserted (for the first time ever) in the proposed Pretrial Order (Doc. 26 at 2) that an entirely different entity, Prestige Title of Alabama, LLC, closed the loan, there is no support for this claim in the record. Rather, all of the documentation unequivocally shows that the entity Prestige Title Co., Inc., is the entity who closed on the Sheffields' loan. There is no mention or reference to Prestige Title of Alabama, LLC in any of the documents. As such, the Defendant's assertion lacks merit and Prestige Title Co., Inc. is the proper defendant in this case.

has harmed him or how he relied upon the forgery to his detriment.

In response, Defendant Prestige Title asserts that this Court should make a credibility determination because Mrs. Sheffield's testimony "is not credible and does not constitute sufficient or credible evidence that her signature on the mortgage was a forgery." (Doc. 15 at 15).

At the outset, courts do not engage in credibility determinations on summary judgment review and indeed, are prohibited from same. Instead, courts are to view the facts in the light most favorable to the Plaintiff and the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. See, e.g., Tipton, 965 F.2d at 999; Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (providing that "credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions[]"); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir. 1987) (stating that on a summary judgment motion, the court may not weigh the credibility of the parties). Accordingly, the Court will not engage in the credibility determination proposed by Defendant Prestige Title.

With those principles in mind, the Court now examines Defendant Prestige Title's arguments regarding Plaintiffs' forgery claim in the light most favorable to Plaintiffs. Section 6-10-3 of the Alabama Code provides that "[n]o mortgage, deed, or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before the officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by Section 35-4-29." Ala. Code § 6-10-3 (1975). In other words, no deed or mortgage of real property which constitutes the homestead of a married person shall be valid

17

without the voluntary signature and assent of the husband and wife, whose signature must be notarized. In Alabama, a deed by a married grantor conveying a property interest is invalid, a nullity and void in absence of the spouse's signature. See generally Yeager v. Lucy, 998 So.2d 460 (Ala. 2008); Pratt v. Langston, 669 So.2d 967 (Ala. Civ. App. 1995); Sims v. Cox, 611 So.2d 339 (Ala. 1992); Worthington v. Palughi, 575 So.2d 1092 (Ala. 1991); Gardner v. Roberts, 565 So.2d 638 (Ala. Civ. App. 1990); Gilley vs. Daniel, 378 So.2d 716 (Ala. 1979); Watkins v. Pennell, 231 So.2d 84 (Ala. 1970); Hewett v. McGaster, 133 So.2d 189 (Ala. 1961). However, where a husband seeks the cancellation of the mortgage or deed to the homestead property on the ground that the wife's signature and assent were not offered to the instrument and shown to have been duly acknowledged, as this section requires, the husband must offer to do equity by restoring the consideration that he received for the execution of the conveyance. See, e.g., Hewett, 133 So.2d at 190-191.

It is clear that Mr. Sheffield has the right to seek equitable relief of setting aside the mortgage. However, Mr. Sheffield has not sought such relief for Plaintiffs and he does not intend on restoring the consideration (refinancing) that he received. Indeed, there has been no request for any equitable relief that the mortgage be set aside as void or invalid.[18] Additionally, even assuming that Mrs. Sheffield's signature was forged, Plaintiffs have presented no evidence of any damages resulting from that alleged forgery. Mr. Sheffield acknowledges having received the loan proceeds sought from the mortgage to Franklin Bank and moreover, he has asserted no allegations that his right of possession to the property has been disturbed or otherwise affected. The same holds true as to any claim by Mrs. Sheffield because Mr. Sheffield has asserted the very same claims against

---

[18] It appears that such an action would only be proper against Wells Fargo, the current holder of the mortgage.

Defendant Prestige Title for both he and his wife. Accordingly, Defendant Prestige Title Co., Inc.'s motion for summary judgment with regard to Plaintiffs' forgery claim is **GRANTED.**

### III.     Conclusion

Based upon the foregoing, Defendant FDIC/Franklin Bank, SSB's motion for summary judgment (Docs. 8, 9) is **DENIED;** Defendant Prestige Title, Co. Inc.'s motion for summary judgment (Docs. 14, 15, 17) is **GRANTED;** and Plaintiffs' motion to dismiss (Doc. 19) is **MOOT.**

**DONE** and **ORDERED** this the **15th** day of **September 2009.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**