**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOSEPH M. SHEFFIELD and, | ) | |
| MARGIE L. SHEFFIELD, | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **CIVIL ACTION NO: 09-00061-KD-M** |
| | ) | |
| FEDERAL DEPOSIT INS. CO., | ) | |
| (as Receiver for FRANKLIN BANK, SSB) | ) | |
| and PRESTIGE TITLE CO., INC., | ) | |
|     **Defendants.** | ) | |

**ORDER**

This matter came before the Court for a non-jury trial on October 19, 2009. Upon consideration of the documentary and testimonial evidence presented at trial and all other pertinent portions of the record, including the parties' post-trial submissions (Docs. 36 & 37), the Court makes the following findings of fact and conclusions of law.

**I.**    **Procedural Background**

On September 8, 2006, Plaintiff Joseph Sheffield ("Mr. Sheffield"), who is proceeding *pro se,* initiated this litigation in the Circuit Court for Mobile County, Alabama (CV-06-3133) against Franklin Bank, State Savings Bank ("Franklin Bank") and Prestige Title Company, Inc. ("Prestige Title").[1] (See Doc. 1-4). Plaintiffs' Complaint (as amended) alleged claims against Defendants for fraud and forgery stemming from Franklin Bank's failure to provide Mr. Sheffield with credit life insurance ("credit life") and Prestige Title's alleged forgery of Mrs. Sheffield's name on certain documents. (Id.) As explained in this Court's order of September 15, 2009 (Doc. 30), the Court's jurisdiction obtains pursuant to 28 U.S.C. § 1331, but Alabama law governs the substance of

---

[1] Mr. Sheffield later joined his wife, Mrs. Margie Sheffield, as a plaintiff.

Plaintiffs' claims  (See Doc. 27 at 2; Doc. 9-8).

Plaintiffs seek actual damages in the amount of $103,500, which corresponds to the principal amount of a refinanced mortgage Mr. Sheffield obtained through Franklin Bank.  (Doc. 9-8 at 7). In the alternative, Plaintiffs ask the Court to order Defendants to pay off the mortgage.  (Id.)  The Sheffields also seek punitive damages (id. at 4-6; Doc. 1-4 at 14) as well as $882.89 worth of "out-of-pocket" expenses.  (Doc. 1-4 at 192).

Defendant Federal Deposit Insurance Corporation ("FDIC") removed this case on February 5, 2009 to this Court.  (Doc. 1).  The notice of removal states that on November 7, 2008, the Texas Department of Savings and Mortgage Lending issued an Order of Closure declaring Franklin Bank State Savings Bank insolvent and appointed the FDIC as its Receiver and tendering all assets and affairs of Franklin Bank to the receiver.  (Id.)

In June 2009, Defendant FDIC/Franklin Bank and Defendant Prestige Title both filed motions for summary judgment (Docs. 8, 9, 14, 15, 17).  On September 10, 2009 this Court held a Pretrial Conference and hearing on the then-pending motions during which Mr. Sheffield offered sworn testimony in support of his opposition to the motions.  The Court resolved the motions for summary judgment in an order dated September 15, 2009, and dismissed Plaintiffs' forgery claims against Prestige Title.  (Doc. 30).  Defendant FDIC then filed a motion to alter or amend judgment on the grounds that Plaintiffs' claims are barred by Eleventh Circuit precedent interpreting the common-law D'Oench doctrine and Sections 1823(e) and 1821(d)(9)(A) of Title 12 of the United States Code. (Doc. 33).  That motion (Doc. 33) is **GRANTED in part** and **DENIED in part** in conformity with the following analysis.

## II.   **Findings of Fact**

In 2005, GreenTree Financial ("GreenTree") held a mortgage on Plaintiff's home and acreage. (Mr. Sheffield's Tr. Testimony).   In December of 2005, Mr. Sheffield solicited banks and mortgage companies via the internet for the purpose of refinancing his mortgage. (Mr. Sheffield's Tr. Testimony).   At that time, the Sheffields had a Chapter 13 bankruptcy case  pending in this district.  (Id.).

A man named Steve Hobbs ("Hobbs"), who in December of 2005 was employed by Franklin Bank and based out of Sedro-Woolley, Washington, responded via telephone to one of Mr. Sheffield's refinancing inquiries.   (Id.).  During their initial conversation, Mr. Sheffield explained to Hobbs that he had experienced difficulty obtaining credit life insurance and specifically asked whether Franklin Bank could provide him with the product.  (Id.).  Hobbs replied in the affirmative. (Id.).  Hobbs promptly sent Mr. Sheffield mortgage application paperwork.  (Id.).  Upon receipt, Mr. Sheffield noted that no credit life insurance rate appeared on the paperwork.  (Id.).  He called Hobbs to inquire as to why the credit life information was missing.  (Id.).  Hobbs responded that he would get the issue "fixed up" for Mr. Sheffield, and quoted him a monthly credit life insurance rate of $100-125.   (Id.).   Relying on these representations, Mr. Sheffield completed the application paperwork and sent it back to Hobbs along with Veterans Administration ("VA") refinancing forms, medical information regarding Mr. Sheffield's disability, and a power of attorney over Mr. Sheffield's VA disabilities.  (Id.).

As part of the application paperwork, Mr. Sheffield completed and signed an initial Truth

in Lending Disclosure statement.[2] (Def. Tr. Exh. 4; Mr. Sheffield's Tr. Testimony).  That document included the following statement under the heading "CREDIT LIFE": "Credit life insurance . . . [is] not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost."  (Id.)  Underneath the statement is a table containing the statement "I want credit life insurance."  (Id.)  Next to that statement appears the word "Signature," followed by a blank in which Mr. Sheffield's signature appears.  (Id.)  The Truth in Lending Disclosure statement also bears the signature of a Franklin Bank representative (id.), and former Senior Vice-President of Franklin Bank, Sharon Koehl, affirmed in an affidavit that the mortgage application "documents indicate that Plaintiff may have desired credit life insurance[.]" (Doc. 9-9, ¶ 2).

The Court finds that, based on this exchange of information, Hobbs, on behalf of Franklin Bank, made an offer to Mr. Sheffield for credit life insurance and Mr. Sheffield accepted the offer.  The Court also finds that Mr. Sheffield's primary motivation for refinancing his mortgage with Franklin Bank was Hobbs' promise that Franklin Bank would provide Mr. Sheffield with credit life insurance.  (Mr. Sheffield's. Tr. Testimony).

On May 31, 2006, Mr. Sheffield executed the negotiated loan agreement with Franklin Bank through which the Sheffields' home and acreage were refinanced with a Veterans Affairs' mortgage securing a Note with a principal balance of $103,500.  (Id.; Doc. 9-2).  At that time, Mr. Sheffield also executed a documented entitled Notice of No Oral Agreements which states that "THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS." (Def. Tr. Exh. 7).  Credit

---

[2]  The top of this document states "this is neither a contract or a commitment to lend."

life insurance was not mentioned in the final documentation of the mortgage transaction that Mr. Sheffield signed on May 31, 2006.  (Doc. 9-9, ¶ 3; Def. Tr. Exhs. 3, 5-6).

The loan documents did not mention credit life insurance, and Mr. Sheffield knew that he did not have credit life when he signed the loan documents on May 31, 2006.  (Doc. 9-3 at 67, 94, 100-101; Mr. Sheffield Tr. Testimony).  However, the fact that the loan documents did not refer to credit life insurance did not concern Mr. Sheffield because Hobbs instructed Mr. Sheffield that he would only be able to secure the insurance by waiting until he closed on the loan and then calling a phone number specified by Hobbs as the phone number for the entity that would provide Mr. Sheffield credit life.  (Doc. 9-8 at 2-3; Mr. Sheffield Tr. Testimony).  Mr. Sheffield understood this instruction to mean that he had to wait until the loan rescission period had expired before making the call.  (Mr. Sheffield's Tr. Testimony).

On June 5, 2006 the loan rescission period expired and the refinancing proceeds were applied to pay off the Sheffield's prior mortgage with GreenTree and to secure the discharge of the Sheffields' pending Chapter 13 bankruptcy case. (Doc. 9-3; Mr. Sheffield's Tr. Testimony).  Also on June 5, 2006, Mr. Sheffield called an insurance company Hobbs had specified at a phone number Hobbs had provided for that purpose.  (Mr. Sheffield Tr. Testimony; Mr. Sheffield Pretrial Conf. Testimony; Doc. 9-8 at 2-3).  The person he spoke with at the insurance company informed Mr. Sheffield that no one at Franklin Bank would ever sell credit life insurance without an escrow account and denied any acquaintance with Hobbs.  (Id.)  Defendant FDIC/Franklin Bank later admitted in the course of this litigation that "Franklin Bank does not offer this [credit life insurance] product." (Doc. 1-4 at 204). Franklin Bank sold the Sheffields' mortgage to Wells Fargo in September of 2006 before the FDIC assumed receivership.  (Doc. 9-9, ¶ 5).

The Court finds that Hobbs, acting on behalf of Franklin Bank, actively deceived Mr.

5

Sheffield by offering him credit life insurance and, upon Mr. Sheffield's acceptance of the offer, continuing to represent that Franklin Bank would provide credit life.[3]  (Doc. 9-8 at 5; Pl.'s Tr. Testimony; Pl.'s Pretrial Conf. Testimony).  Mr. Sheffield reasonably relied on Hobbs' repeated representations that Franklin Bank would provide him with credit life insurance, and Hobbs' representations regarding credit life induced Plaintiffs to refinance their mortgage with Franklin Bank.  (Id.)

Moreover, Hobbs' representations regarding credit life caused Mr. Sheffield to forbear from seeking alternative sources of life insurance for five months or more.  (Id.)  After he discovered in June of 2006 that Franklin Life would not provide him with credit life insurance, Mr. Sheffield tried to obtain ordinary life insurance and credit life insurance in the open market.  (Pl.'s Tr. Testimony).  The only insurance he was able to obtain was a life insurance policy in the amount of the mortgage covering solely accidental death.  (Id.; Mrs. Sheffield's Tr. Testimony).    On or about June 10, 2006, Mr. Sheffield completed a "Mortgage Life Insurance Application" through Minnesota Life. (Doc. 32 at 2; Mr. Sheffield Tr. Testimony).  The application reflects projected credit life insurance rates based on age groups.  (Doc. 32 at 18; Mr. Sheffield Tr. Testimony).   The documentation indicates  that Plaintiffs, assuming they could obtain coverage at all, would be required to make payments at a monthly rate of between $293.28 and $439.92 in order to insure the principal balance of their mortgage.  (Id.)

---

[3]FDIC/Franklin Bank presented no evidence to refute Mr. Sheffield's testimony.  The Court finds Mr. Sheffield credible on this issue.

6

III.     **Conclusions of Law**

A.      **Fraud in the Inducement**

A party who has been the victim of a misrepresentation or the suppression of a material fact regarding which there is a duty to speak and who reasonably relied upon such misrepresentation or suppression during negotiations can claim fraud in the inducement. See, e.g., Lacey v. Edmunds Motor Co., 113 So.2d 507, 510 (1959).   Such a plaintiff effectively claims: "I would never have entered into the contract if you had not induced me to do so by incorrect statements or omissions of material facts." Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources, 986 So.2d 1093, 1129 (Ala. 2007) (internal quotation marks omitted); see also Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala. 2000).  Plaintiffs' Complaint states a claim for fraud in the inducement. (Doc. 30).

Under Alabama law,  "[a] person owes a duty not to make a misrepresentation to those to whom he intends, for his own purposes, to reach and influence by the representation, or to those to whom he has a public duty created by statute or pursuant to a statute."  Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1045 (Ala. 1990) ("duty is an essential element of fraud") (citing Colonial Bank of Alabama v. Ridley & Schweigert, 551 So. 2d 390, 396 (Ala. 1990) ("No 'agent . . . shall knowingly make a false or fraudulent statement or representation in, or relative to, an application for insurance'")).   It is elementary that Hobbs, as a Franklin Bank loan officer facilitating Plaintiffs' mortgage refinance, owed Franklin Bank's customer, Mr. Sheffield, a duty not to mislead Sheffield about the products and services offered by the bank.

In Alabama, a plaintiff who "alleges that he was induced by fraud to enter into a contract

[and] either rescinds the agreement by restoring benefits and recovering payments, or affirms it, retains benefits, and sues in deceit for damages." Lacey v. Edmunds Motor Co., 113 So.2d 507, 510 (Ala 1959).  Plaintiffs do not wish to rescind the mortgage.  (Pl.'s Pretrial Conf. Testimony; Pl.'s Tr. Testimony).  Accordingly, Plaintiffs' remedy for fraud in the inducement is to sue in deceit for damages.

An individual "who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers." Ala. Code § 6-5-104 (a). In order to succeed upon a claim of fraudulent deceit based upon a promise, a plaintiff must offer proof that the promisor had no intention of performing the promise at the time it was made.  See Ala. Code § 6-5-104 ("[a] deceit within the meaning of this section is . . . a promise made without any intention of performing it").  Such intent to deceive must be demonstrated by something other than "the failure to perform a promised act."  Benetton Servs. Corp., 551 So.2d 295, 298 (Ala. 1989). During three separate conversations—Mr. Sheffield's initial telephone contact with Hobbs; Mr. Sheffield's follow-up discussion with Hobbs during which Hobbs quoted Sheffield a range of rates that Franklin Bank would charge for credit life insurance; and the conversation during which Hobbs provided Mr. Sheffield with a telephone number he needed to call in order to obtain the insurance—Franklin Bank, through its employee Steve Hobbs, promised to provide Mr. Sheffield with credit life insurance.  Hobbs, however, had no intention of providing Mr. Sheffield with credit life insurance when he made the representations.  The product is not offered by Franklin Bank, there was no mention of it in the loan closing documents, and the person answering the phone at the number Hobbs provided, allegedly for the purpose of obtaining credit life insurance, had never heard of Hobbs and was unable to facilitate Mr. Sheffield's efforts to obtain credit life insurance.

In order to recover for damage that occurs as a result of deceit, "a plaintiff's reliance on false statements must be reasonable." Newman v. First Nat. Bank of Mobile, 497 So. 2d 106 (Ala. 1986). Under the circumstances, Plaintiffs' reliance on Hobbs representations regarding Franklin Bank's willingness to provide him with credit life insurance were reasonable. On more than one occasion, Mr. Sheffield questioned whether Franklin Bank could and would offer him credit life insurance. Hobbs repeatedly reassured Mr. Sheffield that the bank would provide him with credit life.

A plaintiff may be damaged if he "los[es] the . . . opportunity to obtain [alternate insurance] coverage by relying on the protection of [a] policy as represented by [a] defendant." Nat'l Sec. Ins. Co. v. Beasley, 406 So. 2d 923 (Ala. Civ. App. 1981), writ denied, Ex parte Nat. Sec. Ins. Co., 406 So.2d 926 (Ala. 1981). Mr. Sheffield's relied on Hobbs' representations to his detriment. He accepted Franklin Bank's offer of credit life insurance and opted to refinance with Franklin Bank because they agreed to provide him with credit life insurance. After the rescission period on the loan closed, more than five months after Franklin Bank's offer, Mr. Sheffield discovered that the bank was unable to provide him with credit life insurance. He has since been unable to obtain credit life insurance in the open market. Even if Mr. Sheffield were able to obtain credit life insurance, the evidence suggests that it would cost him at least $293.28 per month, which equals over $168 per month more than Franklin Bank had agreed to charge. Accordingly, the Court concludes that Franklin Bank fraudulently induced Plaintiffs to refinance their mortgage.

### B.   The D'Oench Doctrine and Title 12, Sections 1823(e) and 1821(d)(9)(A)

This Court previously determined in its order denying summary judgment to FDIC (Doc. 30) that Section 1823(e) and Section 1821(d)(9)(A) of Title 12 did not bar Plaintiffs' claims because the FDIC had not acquired the bank asset to which they related. (Doc. 30). However, the Court's

9

prior order did not address whether the federal common law D'Oench doctrine nonetheless barred Plaintiffs' claims against the FDIC.

The federal common law D'Oench doctrine survived the enactment of Sections 1823(e) and Section 1821(d)(9)(A).  See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A., ("Motorcity I"), 83 F.3d 1317 (11th Cir.1996) (en banc), vacated and remanded by Hess v. FDIC, 519 U.S. 1087 (1997), reinstated by Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A., ("Motorcity II"), 120 F.3d 1140 (11th Cir.1997), (en banc), cert. denied, Hess v. FDIC, 523 U.S. 1093 (1998).  "In light of [the Eleventh Circuit's] holding that the federal common law D'Oench doctrine has not been preempted," there is no need to "decide whether §§ 1821(d)(9)(A) or 1823(e)(1) are limited to claims that impair the FDIC's interest in a specific asset."  Id. at 1336.

The D'Oench doctrine bars would-be plaintiffs from suing the FDIC for all "claims—even those sounding in tort—that are 'sufficiently intertwined with regular banking transactions, such that exclusion of the alleged 'secret agreement' accords with the underlying policies of D'Oench.'"  Id. (citing OPS Shopping Ctr. v. FDIC, 992 F.2d 306, 310 (11th Cir.1993)).  The "principal policies" that underlie the D'Oench doctrine are:

> (1) [ ]permit[ting] federal and state bank examiners to rely upon the bank's records of regular banking transactions in evaluating the institution's fiscal soundness; (2) [ ] 'ensur[ing] mature consideration of unusual loan transactions by senior bank officials,' and (3) [ ] 'prevent[ing] fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.'

Id. at n. 18 (quoting Langley v. FDIC, 484 U.S. 86, 91 (1987)).  Thus, "a tort claim involving any 'scheme or arrangement whereby the banking authority is likely to be misled' cannot be asserted against the banking authority."  Id. at 1336-37 (citing RTC v. Dunmar Corp., 43 F.3d 587, 593 (11th Cir.) (en banc), cert. denied sub nom.  Jones v. RTC, 516 U.S. 817 (1995)).  Under D'Oench, a

party need not have intended to deceive anyone in order for its claim to be barred.  It is sufficient that the plaintiff "lent himself to a scheme or arrangement whereby the banking authority . . . was likely to be misled." Id. at 1337 (citing  D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 460 (1942)).

By relying upon Hobbs' credit life insurance offer, despite the fact that the offer was not memorialized in any of the loan documents executed at closing, Plaintiffs lent themselves to an arrangement whereby the banking authority was likely to be misled.  Accordingly, Franklin Bank's agreement to provide credit life insurance was sufficiently intertwined with the Sheffield's mortgage—an ordinary banking transaction—such that excluding the agreement to provide credit life insurance accords with the policies underlying D'Oench.

Nor can Plaintiffs' fraudulent inducement claim properly be considered a free-standing tort claim.  So-called "free standing tort claims" that "do not implicate the records of banking transactions" form a narrow exception to D'Oench's bar. Id. (citing In re Geri Zahn, 25 F.3d 1539, 1543-44 (11th Cir. 1994)).  In determining whether a tort claim is "free standing," courts have considered, among other things, whether the events and/or representations giving rise to the claim occurred during discussions surrounding an ordinary banking transaction and involved matters that should have been included in the documents contained in the bank's records.  See id. (barring claims based on alleged oral agreements and representations that the defendant would monitor the plaintiff's floor operations where the representations were allegedly made during negotiations preceding the signing of a floor-plan financing agreement) (citing Langley, 486 U.S. 86 (barring a defense of fraud in the inducement)); and Geri Zahn, 25 F.3d 1539 (barring claims arising out of misrepresentations alleged to have occurred during loan negotiations).   A finding that the events

and representations giving rise to the claim occurred during discussions or negotiations surrounding an ordinary banking transaction prompts courts to conclude that the tort claim or defense is not free-standing and therefore falls within D'Oench's bar.  See id.

Plaintiffs' fraudulent inducement claim cannot be considered a free-standing tort claim because the deceit that gave rise to the claim occurred during negotiations and discussions surrounding an ordinary banking transaction.  Moreover, records of the premium Franklin Bank planned to charge Plaintiffs for credit life insurance should have been reflected in Plaintiffs' loan documents.  (See Def. Tr. Exh. 3 (reflecting hazard insurance premium)).  Accordingly, Plaintiff's claims are barred by the D'Oench doctrine.

## III.    Conclusion

The Court finds in favor of Defendant FDIC, concluding that Plaintiffs' otherwise viable claim for fraud in the inducement is barred by the common law D'Oench doctrine as applied by the Eleventh Circuit.   The Defendant FDIC's motion to alter/amend (Doc. 33) is accordingly **GRANTED in part** and **DENIED in part** in conformity with the foregoing analysis, and Plaintiffs' claims against Defendant FDIC are hereby **DISMISSED**.

A judgment consistent with the terms of this memorandum order shall issue contemporaneously herewith.

**DONE** and **ORDERED** this the **12th** day of **November, 2009.**

 /s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**